E-FILED
Friday, 26 June, 2020 02:36:52 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 06-cr-30058** |
| | ) | |
| **SPENCER HARRIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Spencer Harris's Amended Motion for Compassionate Release (d/e 83) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

On October 10, 2006, a jury found Defendant guilty of five counts as charged in the Second Superseding Indictment, d/e 14. Count One charged Defendant with distribution of five or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Count Two charged Defendant with possession with intent to distribute five or more grams of cocaine base in violation of 21

U.S.C. §§ 841(a)(1) and (b)(1)(B). Count Three charged Defendant with possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Four charged Defendant with possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i). Count Five charged Defendant with distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

On May 21, 2007, U.S. District Judge Jeanne Scott sentenced Defendant to a total of 460 months' imprisonment, consisting of 400 months on Counts One, Two, and Five, and 120 months on Count Three, all to run concurrently with each other, and 60 months on Count Four to run consecutively to all other counts. Minute Entry, May 21, 2007. Judge Scott also imposed an 8-year term of supervised release consisting of 8 years on Counts One and Two, 3 years on Count Three, and 5 years on Counts Four and Five, all to run concurrently. Id.

On February 28, 2020, the undersigned District Judge reduced Defendant's sentence pursuant to Section 404 of the First Step Act to 248 months' imprisonment, consisting of 188 months on Counts One, Two, and Five, and 120 months on Count Three, all

to run concurrently, and 60 months on Count Four, to run consecutively to all other counts. Minute Entry, Feb. 28, 2020. The Court also reduced Defendant's term of supervised release to 6 years on Counts One and Two, with the remainder of the sentence unchanged. Id.

Defendant is currently serving his sentence at USP Florence, in Florence, Colorado. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed June 26, 2020). Defendant's projected release date is June 29, 2024.

On June 15, 2020, Defendant filed a pro se motion for compassionate release (d/e 80) pursuant to 18 U.S.C. § 3582(c)(1)(A). On June 22, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an Amended Motion for Compassionate Release (d/e 83) was filed. Defendant requests compassionate release due to his health issues and the COVID-19 pandemic. According to Defendant's amended motion and the medical records that have been produced in this case, Defendant has been diagnosed with kidney failure and chronic kidney disease, as well as obesity and hypertension. Am. Mot. Compassionate Release 1-2.

If released from custody, Defendant proposed to reside with his daughter and her children at her residence in Brooklyn Park, Minnesota. Id. at 4. The United States Probation Office addressed Defendant's request for compassionate release in a Memorandum (d/e 87) but was unable to conduct a virtual inspection of the proposed residence.

On June 26, 2020, the Court held a video conference hearing on Defendant's motion. The Court heard oral arguments from counsel and a statement made by Defendant. At the hearing, the Court learned from the Probation Office that Minnesota is not currently accepting transfers of supervised release due to the COVID-19 pandemic. In response, Defendant proposed to reside with his aunt, Margarita Jones, at her residence in Springfield, Illinois, rather than with his daughter as previously suggested.

As of June 26, 2020, the Bureau of Prisons (BOP) reports that USP Florence has no confirmed cases of COVID-19. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed June 26, 2020). BOP further reports, however, that only 22 tests have been completed at the facility and 4 more tests are pending. BOP,

COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last accessed June 26, 2020).

The Government objects to Defendant's motion, arguing that this Court lacks jurisdiction to hear Defendant's motion as Defendant has not fully exhausted his administrative remedies under § 3582(c)(1)(A). The Government also argues that Defendant's motion should be denied on the merits considering Defendant's criminal history and his disciplinary history while in custody. The Court finds that it has jurisdiction to hear Defendant's motion and that Defendant has satisfied the requirements for compassionate release.

**II. ANALYSIS**

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018,

Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Defendant submitted a request for compassionate release to the Warden of USP Florence on April 17, 2020. See Pro Se. Mot. for Compassionate Release. On April 27, 2020, the Warden of USP Florence denied Defendant's request for compassionate release. See id. Because more than 30 days have passed since Defendant submitted his request for compassionate release to the Warden of USP Florence, the Court finds that exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

As Defendant's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for compassionate release, the Court, after considering the relevant factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of imprisonment and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

1. Extraordinary and Compelling Reasons for Release

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue

for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Socially distancing can be difficult for individuals living or working in a prison.

Defendant is a fifty-year-old African American male. Am. Mot. Compassionate Release 1. Mr. Harris has been diagnosed with chronic kidney disease and kidney failure, as well as obesity and hypertension. Id. at 1-3.

On June 25, 2020, the Centers for Disease Control and Prevention (CDC) revised its guidelines concerning persons who are at higher risk for severe illness from COVID-19 based on the available evidence.[1] According to the most recent information from the CDC, having chronic kidney disease of any stage increases the risks of severe illness from COVID-19.[2] The most recent guidance

1. See CDC, Coronavirus Disease 2019 (COVID-19), People Who Need Extra Precautions: Who Is at Increased Risk for Severe Illness?, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed June 26, 2020).

2. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavir

from the CDC also indicates that individuals with a body mass index of 30 or more are at risk of severe illness from COVID.[3] Mr. Harris's BMI is 30 according to his amended motion. Am. Mot. Compassionate Release 2. Additionally, according to the CDC, based on the evidence available at this time, people with hypertension might be at increased risk of severe illness from COVID-19.[4] Finally, according to the CDC "[l]ong-standing systemic health and social inequities have put some members of racial and ethnic minority groups at increased risk of getting COVID-19 or experiencing severe illness, regardless of age[, and] [a]mong some racial and ethnic minority groups, including non-Hispanic black persons, Hispanics and Latinos, and American Indians/Alaska Natives, evidence points to higher rates of hospitalization or death

---

us%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#chronic-kidney-disease (last accessed June 26, 2020).

3. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity (last accessed June 26, 2020).

4. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#serious-heart-conditions (last accessed June 26, 2020).

from COVID-19 than among non-Hispanic white persons."[5] According to the CDC, as of June 12, 2020, age-adjusted hospitalization rates are highest among non-Hispanic American Indian or Alaska Native and non-Hispanic black persons, followed by Hispanic or Latino persons. The latest statistics from the CDC indicate that non-Hispanic black persons have a rate of infection that is approximately five times that of non-Hispanic white persons.

The Government argues that the Court should deny Defendant's motion for compassionate release because USP Florence has not yet had any confirmed cases of COVID-19. See Resp. 14. While USP Florence does not have any confirmed cases of COVID-19 at the current time, the same could have previously been said of each of the BOP facilities that has experienced an outbreak of the virus. As United States District Judge Pratt stated in United States v. Nicholson, No. 09-cr-00058-RP-CFB (S.D. Iowa, June 6, 2020), "As other courts have noted, the fact a prison has no confirmed open cases today does not provide much assurance in the current environment."

5. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html.

At the time Judge Pratt wrote that sentence, the facility he was referring to—USP Thomson—also had no confirmed cases of COVID-19. Since then, there have been two confirmed cases of COVID-19 at the facility. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed June 26, 2020). Several other courts have concluded that extraordinary and compelling circumstances warranting a reduction in sentence may be present even when a defendant is housed in a facility without any confirmed cases of COVID-19. See United States v. Williams-Bethea, No. 18-CR-78 (AJN), 2020 WL 2848098, at *5 (S.D.N.Y. June 2, 2020) ("[T]esting remains limited at FCI Danbury, so the Court cannot conclude that the lack of confirmed positive cases means that no inmates at the Defendant's facility carry the virus. For these reasons and others, courts in this district have granted compassionate release to federal inmates due to COVID-19 even where the particular facility at which they were housed had none or few confirmed cases of the virus."); United States v. Schafer, No. 6:18-CR-06152 EAW, 2020 WL 2519726, at *2 (W.D.N.Y. May 18, 2020) ("[W]ithout knowing the percentage of the prison population that has been tested, the fact that there are no

positive COVID-19 cases provides little insight into whether the virus has reached the facility."); United States v. Ben-Yhwh, No. CR 15-00830 LEK, 2020 WL 1874125, at *4 (D. Haw. Apr. 13, 2020) ("It is not a matter of considering Ben-Yhwh's risk of getting sick and receiving less than adequate medical care, it is the consideration that, even with BOP's conscientiousness and care in mitigating the spread of COVID-19 in its facilities through cleaning and social distancing, should Ben-Yhwh contract COVID-19, he is likely to need ICU intervention and has a high likelihood of dying."); United States v. Burrill, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *2 (N.D. Cal. Apr. 10, 2020) ("Federal correctional institutions, which had reported zero COVID-19 cases only weeks ago, and despite the steps the BOP has taken to contain the disease within its facilities, are now reporting numerous virus-related deaths.") (citations omitted). Defendant—who has two underlying medical conditions that place him at greater risk and one condition that may increase his risk of serious illness or death from COVID-19—remains at risk of imminent harm despite the best efforts of the Bureau of Prisons.

The Court begins with the factors set out in 18 U.S.C. § 3553(a). Defendant is currently serving a 248-month term of

imprisonment for one count of distribution of five or more grams of cocaine base, one count of possession with intent to distribute five or more grams of cocaine base, one count of possession of a firearm by a felon, one count of possession of a firearm in furtherance of a drug trafficking offense, and one count of distribution of cocaine.

Defendant has been in custody since his arrest on these offenses on July 7, 2006. According to BOP records, Defendant is scheduled to be released on June 29, 2024. In his pro se motion, Defendant sets forth a reentry plan which includes living with his daughter, who has pledged to support Defendant until he can secure employment. The Court has considered the factors in § 3553(a) and concludes that they entitle Defendant to compassionate release.

2. Sentencing Commission Policy Statements

The relevant policy statement, § 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the

community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13 (2018).

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[6] U.S.S.G. § 1B1.13 cmt. n.1. One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Another circumstance is where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present. U.S.S.G. § 1B1.13 cmt. n.1(D). As discussed above, in this case, Defendant has serious underlying physical and medical conditions which are present in combination with the extraordinary and compelling

6 The Court notes that § 1B1.13 of the Sentencing Guidelines has not been amended to reflect all of the additional language added to 18 U.S.C. § 3582(c)(1)(A). As it stands, § 1B1.13 only refers to a reduction "upon the motion of the Director of the Bureau of Prisoners," which is not the situation here. No sentencing policy provides guidance for when a defendant files a motion. Nevertheless, the Court still considers § 1B1.13.

reason presented by the COVID-19 pandemic.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community. See U.S.S.G. § 1B1.13. If released, if Defendant quarantines himself and practices social distancing, that will diminish the risk of spreading the virus.

Therefore, the Court finds that Defendant has satisfied all requirements for compassionate release.

## III. CONCLUSION

For the reasons set forth above, Defendant Spencer Harris's Amended Motion for Compassionate Release (d/e 83) is GRANTED. The Court hereby reduces Defendant's term of imprisonment in this case from 248 months to time served plus 72 hours in order to allow BOP to test Defendant for COVID-19 and to allow Defendant to arrange transportation.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend 6 months in home confinement, with the first 14 days to be spent in isolation. The home confinement shall start as soon as possible after his term of supervised release begins. During his term of home confinement, Defendant shall be monitored by telephone until such time as it is

practicable to implement electronic monitoring. All other aspects of Defendant's sentence shall remain the same. Defendant's pro se motion for compassionate release (d/e 80) is DENIED as MOOT.

The Bureau of Prisons is ORDERED to immediately test Defendant for COVID-19. The Clerk is DIRECTED to send a copy of this Opinion to USP Florence. Defendant must self-quarantine for a period of 14 days beginning at the time of his release, including while he travels from USP Florence to his residence. Defendant shall travel to his residence in a vehicle with three-row seating that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER: June 26, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE